UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| YOLANDA K. POWELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:11-CV-88 |
| | ) | |
| GABRIEL FURNISH, BRIAN M. JARBOE, | ) | |
| BROCK WILLIAMS, ROBERT HEADFORD, | ) | |
| DEAN HOFFMAN, MICHAEL NEUMANN, | ) | |
| DERRICK WINDOM, MARK ALLEN REED, | ) | |
| SCOTT BORTON, "JOHN DOES/JANE DOES" | ) | |
| (unidentified Allen County officers and Fort | ) | |
| Wayne City officers sued in their individual | ) | |
| capacities), the CITY OF FORT WAYNE, and | ) | |
| the ALLEN COUNTY SHERIFF (sued in their | ) | |
| official capacities), | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

### I. INTRODUCTION

Plaintiff Yolanda Powell alleges that from December 2010 to January 2011 officers from the Allen County Sheriff's Department ("ACSD") and the Fort Wayne Police Department ("FWPD") came to her home numerous times and, on two such occasions, entered her home and searched it without her consent. Powell subsequently brought suit under 42 U.S.C. § 1983 against the Allen County Sheriff and several ACSD officers (collectively, the "Allen County Defendants") as well as the City of Fort Wayne.[1] She asserts that the ACSD officers subjected her to unreasonable searches, seizure, and excessive force and that both the City of Fort Wayne

---

[1] Subject matter jurisdiction arises under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (Docket # 32.)

1

and the Allen County Sheriff had a custom or practice that led to a violation of her constitutional rights and failed to train or supervise its officers. Both the Allen County Defendants and the City have moved for summary judgment on all of Powell's claims. (Docket # 40, 43.)

Although FWPD or ACSD officers have searched Powell's home multiple times, only two such searches remain disputed at this stage of the litigation. The first allegedly occurred on December 21, 2010, in the late afternoon, when, according to Powell, unidentified FWPD officers entered and searched her home without her permission and used excessive force in doing so. Powell alleges that this was a result of the City's inadequate search policy, which did not address whether an officer can enter a third party's home and search for the subject of an arrest warrant who does not live there.

The second disputed search occurred on January 11, 2011, when FWPD officers responded to a "party armed" call at Powell's residence with several of the named ACSD officers acting as backup. Powell maintains that several FWPD officers and at least two ACSD officers entered and searched her home without permission. As to the City, Powell again alleges that the City's search policy was inadequate, this time because it failed to provide guidance as to the limits and scope of exigent circumstances.

In regards to both of Powell's omission theories—failing to include instructions on serving arrest warrants at third party residences and omitting guidance on the limits of exigency—the City responds that a single incident is insufficient to establish municipal liability.

As for the ACSD officers, Powell alleges that at least two ACSD officers entered and searched her home on January 11, 2011, without consent. She maintains that Officer Windom, who admits he entered the home but insists he did not search it, searched her home and that the

second ACSD officer had to be one of the other named officers. The Allen County Defendants respond that Powell has failed to establish the personal involvement of any individual ACSD officer, which is fatal to her claim.

For the following reasons, the City of Fort Wayne's and the Allen County Defendants' respective Motions for Summary Judgment will be GRANTED.[2]

## II. FACTUAL BACKGROUND[3]

In the late afternoon of December 21, 2010, Yolanda Powell alleges that uniformed members of the FWPD entered and searched her home without permission and pointed a firearm at her and her thirteen-year-old daughter.[4] (Powell Aff. ¶ 10; *see* Docket # 52 at 4 n.1.)

On the morning of January 11, 2011, several FWPD officers—none of whom are defendants here—responded to Powell's residence regarding a party armed with a shotgun. (Docket # 44-3 at 1-2.) Three FWPD officers entered Powell's home to clear it and speak with

---

[2] Contemporaneously with this Opinion and Order, the Court is also issuing an Opinion and Order denying Powell's Motion for Leave to Amend Complaint. (Docket # 49.)
 Additionally, the Allen County Defendants filed a motion to strike the FWPD records Powell relies on in her response to their summary judgment motion. (Docket # 57.) Even when considering this evidence, however, Powell's claims still fail as a matter of law and summary judgment is therefore appropriate. Moreover, the Allen County Defendants do not move to strike the City's response to Powell's second interrogatory (Docket # 53-11), which also contains the information they want excluded—namely the indication that more than one ACSD officer entered and searched Powell's home. This would further make the Allen County Defendants' motion to strike moot as this information would come in through the unchallenged interrogatory answer. As such, the Court will consider this evidence and deem the Motion to Strike (Docket # 57) MOOT.

[3] For summary judgment purposes, the facts are recited in the light most favorable to Powell, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). While the parties have presented a significant amount of facts, only the material facts of the two disputed searches are set forth below. As these same basic facts are relevant to both summary judgment motions, they are uniformly presented. Any additional facts necessary to the respective motions will be provided within the discussion.

[4] Although Powell cites to two other exhibits that supposedly provide evidentiary support for this incident (*see* Docket # 52 at 3-4), neither of these exhibits suggest that the FWPD conducted a search in the late afternoon of December 21, 2010 (*see* Docket # 51-4 (containing the "Law Incident Table," which indicates that the only incident that occurred on December 21, 2010, was the *ACSD* attempting to serve a warrant); Docket # 51-6 (showing the radio log for the January 11, 2011, incident).

3

her. (Docket # 44-3 at 2.)

ACSD Officers Michael Neumann, Derrick Windom, Mark Allen Reed, and Scott Borton backed up the FWPD officers on January 11, 2011. (Neumann Aff. ¶ 13; Windom Aff. ¶ 13; Reed Aff. ¶ 5; Borton Aff. ¶ 5.) Officers Neumann, Reed, and Borton maintain they did not enter the residence, but remained staged outside. (Neumann Aff. ¶¶ 14-15; Reed Aff. ¶¶ 6-7; Borton Aff. ¶¶ 6-7.) Officer Windom entered the residence, but asserts he did not search it; rather, he claims he spoke to Powell with a FWPD officer. (Windom Aff. ¶ 14-15; Docket # 53-2 at 3.) In fact, the Allen County Defendants attest that Officer Windom was the only ACSD officer to enter Powell's home that day. (Docket # 53-2 at 3.) Narrative reports from the FWPD officers (Docket # 53-7, 53-10) and the City's answer to Powell's second interrogatory (Docket # 53-11) produced during discovery, however, suggest that at least two ACSD officers entered the house—a point Powell also makes in her affidavit (Powell Aff. ¶ 11)—and went upstairs with a FWPD officer to clear the second floor (Docket # 53-10; *see* Docket # 53-11).

### III. STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770. When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 507 (7th Cir. 2010) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)). If the evidence is such that a reasonable factfinder could return a verdict in favor of the

4

nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

## IV. THE CITY OF FORT WAYNE'S MOTION FOR SUMMARY JUDGMENT

### A. Procedural Background

Powell initially brought suit against the City of Fort Wayne under § 1983 for (1) having in place unconstitutional policies, customs, procedures, or practices pertaining to searches and seizures; and (2) failing to adequately train and/or supervise its officers regarding when a warrantless entry into a residence is appropriate. (Docket # 1 at ¶ 2.) In her response to the City's motion for summary judgment, however, Powell explicitly abandoned her failure to train claim. (Docket # 52 at 2.) As such, the Court addresses only Powell's policy and practice claim.

### B. Additional Factual Background

The FWPD has a written, formal policy regarding warrantless searches. (*See* Berning Aff. ¶ 6, Ex. B.) The policy provides that officers may search property without a warrant if they have either written or verbal consent or if exigent circumstances exist. (Berning Aff. Ex. B at 2-4.) Specifically, the exigent circumstances section states the following:

> An officer may conduct a search and/or seizure, with articulable probable cause, when the action must be taken on a "now or never" basis to preserve evidence. These situations may be found when a substantial risk of harm to others or the police would exist if an officer were to delay until a warrant was obtained.

(Berning Aff. Ex. B at 4.)

5

*C. Discussion*

Municipalities cannot be held liable for § 1983 claims under a theory of *respondeat superior*; rather, "municipal liability exists only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'" *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (quoting *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Thus, the City can only be liable when the constitutional deprivation results from a municipal custom or policy, which requires Powell to establish "a direct causal link between a custom or policy of the City and the unconstitutional conduct that [she] alleges," *Robles v. City of Fort Wayne*, 113 F.3d 732, 735 (7th Cir. 1997) (citations omitted), and that the official policy or custom was the "moving force" behind the alleged constitutional violation, *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008). According to the Seventh Circuit Court of Appeals, "unconstitutional policies or customs can take three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Rasche v. Vill. of Beecher*, 336 F.3d 588, 598 (7th Cir. 2003) (citation omitted); *accord Calhoun*, 408 F.3d at 379.

The first theory—the "express policy" theory—applies when a plaintiff can point to an explicit policy or an omission in that policy that violates a constitutional right. *Weeks v. Hodges*, No. 1:09 CV 119, 2012 WL 1669459, at *11 (N.D. Ind. May 10, 2012); *see Calhoun*, 408 F.3d at 379; *Hughes v. City of Chicago*, No. 08-cv-627, 2011 WL 5395752, at *5 (N.D. Ill. Nov. 8,

6

2011). Under an explicit policy claim, "one application of the offensive policy resulting in a constitutional violation is sufficient to establish municipal liability." *Calhoun*, 408 F.3d at 379-80 (citing *City of Okla. v. Tuttle*, 471 U.S. 808, 822 (1985)). On the other hand, claims of policy omissions, which are similar to claims about widespread practices not tethered to a particular written policy, require more evidence than a single incident to establish liability. *Id.* at 380. This is because "[n]o government has or could have policies about virtually everything that might happen. The absence of a policy might thus mean only that the government sees no need to address the point at all, or that it believes that case-by-case decisions are best, or that it wants to accumulate some experience before selecting a regular course of action." *Id.*

Moreover, in both the "widespread practice" implicit policy cases and those cases attacking gaps in express policies, evidence that there is a true municipal policy at issue, rather than simply a random event, is needed. *Id.* As the Supreme Court has explained, "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality and the causal connection between the [omission in the policy or lack of policy] and the constitutional deprivation." *Id.* (quoting *Tuttle*, 471 U.S. at 824 (footnote omitted)) (alteration in *Calhoun*); *Hughes*, 2011 WL 5395752, at *5 (quoting same). Similarly, "while at times the absence of a policy might reflect a decision to act unconstitutionally, one incident . . . is insufficient to establish that the need for a policy was so obvious that the municipality effectively exercised a deliberate indifference toward [the plaintiff's] rights." *Hughes*, 2011 WL 5395752, at *5 (citing *Calhoun*, 408 F.3d at 379). And, as the Supreme Court has repeatedly instructed, courts should be cautious about drawing such an inference. *Calhoun*, 408 F.3d at 380

7

(collecting cases).

In the instant case, Powell proceeds by attacking gaps in the FWPD's express search policy. As such, because Powell claims that *omissions* from an express policy, rather than the explicit policy, caused a violation of her Fourth Amendment rights, she must present more evidence than a single incident to establish municipal liability. *Calhoun*, 408 F.3d at 380.

While Powell points to two incidents here—one on December 21, 2010, and a second on January 11, 2011—she argues that each is the result of a *different* omission from the FWPD's search policy.[5] According to Powell, the alleged search and use of excessive force on December 21st was the result of the policy's failure to instruct officers on the parameters of searching for the subject of an arrest warrant in a third party's home. (*See* Docket # 52 at 10.) Yet she maintains the January 11th search occurred because of a different omission from this policy—namely, the lack of guidance concerning the scope and limits of exigent circumstances and how to determine when an exigency has dissipated. (*See* Docket # 52 at 9-10.) And Powell has provided no evidence that these separate omissions from the FWPD's search policy caused others to experience constitutional deprivations. "While it is not impossible for a plaintiff to show the existence of a policy or custom based on [her] own experience, it is significantly more difficult." *Weeks*, 2012 WL 1669459, at *12 (citing *Grieveson*, 538 F.3d at 774). As such,

---

[5] Notably, besides Powell's own self-serving statements, there is no evidence that this December 21, 2010, search happened. (*See* Powell Aff. ¶ 10.) The record reflects that only one search occurred on December 21, 2010, and that was the consented search in the morning by the ACSD officers with an arrest warrant for Lorenzo Lapsley, Powell's former boyfriend. (*See* Docket # 51-2 at 2, 51-4.) As previously noted in footnote 4, the two exhibits besides her affidavit that Powell cites as providing evidentiary support for this incident (*see* Docket # 52 at 3-4) do not give any indication that the FWPD performed a second search on December 21, 2010. Such unsupported allegations do not provide evidence sufficient to withstand summary judgment. *See Truhlar v. U.S. Postal Serv.*, 600 F.3d 888, 893 (7th Cir. 2010). If this December 21st search did not occur, then Powell would only have one incident of an alleged constitutional violation and her claim would undoubtedly fail. *See, e.g.*, *Calhoun*, 408 F.3d at 380. Regardless, even if this search occurred, Powell's policy or practice claim against the City fails as a matter of law.

Powell has failed to show that these two isolated incidents, which she argues were caused by separate omissions from the policy, were the result of a true municipal policy or were a widespread practice in Fort Wayne; rather, they appear to be simply random events that, based on this record, only she experienced. *See Calhoun*, 408 F.3d at 380; *Shelby Indus. Park, Inc. v. City of Shelbyville*, No. 1:06-cv-1150-DFH-WTL, 2008 WL 2018185, at *17 (S.D. Ind. May 9, 2008) (noting that there was no evidence that officers' alleged constitutional violations resulting from the lack of written policies were widespread practices in the city).

Furthermore, Powell has not established that the different omissions caused more than one constitutional deprivation in her own experience, let alone for others, and "one incident—which is all that [Powell] has provided evidence of—is insufficient to establish that the need for a policy was so obvious that the [City] effectively exercised a deliberate indifference toward [her] rights." *Hughes*, 2011 WL 5395752, at *5. And finally, as the City argues—and Powell does not dispute—the FWPD's express search policy is itself constitutional (*see* Docket # 60 at 2-3), which means that considerably more proof than a single incident is necessary to establish both the City's fault and the causal connection between the policy omission and the alleged constitutional deprivation, *Calhoun*, 408 F.3d at 380. Therefore, as Powell has failed to provide evidence for more than a single incident resulting from each of these supposedly unconstitutional omissions from the FWPD's search policy, she cannot establish municipal liability. *Tuttle*, 471 U.S. at 824; *Calhoun*, 408 F.3d at 380; *Hughes*, 2011 WL 5395752, at *5. Accordingly, the City is entitled to summary judgment as a matter of law on this claim.

## V. THE ALLEN COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. *Procedural Background*

Turning to the Allen County Defendants' summary judgment motion, in her Complaint, Powell brought suit under § 1983 against the Allen County Sheriff in his official capacity (Docket # 1 at ¶ 2) and several ACSD officers (Docket # 1 at ¶¶ 3-4). Specifically, Powell claimed that the Allen County Sheriff was liable for unconstitutional policies, practices, and/or procedures regarding the execution of arrest warrants at a third party's home and for failing to adequately train officers on this topic. But, in her response to the Allen County Defendants' motion for summary judgment, Powell explicitly abandoned both of these claims. (Docket # 54 at 7.) As such, the Sheriff is entitled to summary judgment in his favor and dismissal from this case. The Allen County Defendants' Motion for Summary Judgment will therefore be GRANTED as to the Allen County Sheriff.

As for the individual ACSD officers, Powell initially alleged that Officers Gabriel Furnish, Brian M. Jarboe, Brock Williams, Robert Headford, Dean Hoffman, Neumann, Windom, Reed, and Borton subjected her to unconstitutional searches, seizure, and excessive force, all in violation of her Fourth Amendment rights. Powell, however, has explicitly dropped her excessive claim against each of these officers and her unconstitutional search claim against Officers Furnish, Jarboe, Williams, Hoffman, and Headford. (Docket # 54 at 7.) On the other hand, she argues that genuine issues of material fact preclude dismissal of her unconstitutional search claim against Officers Neumann, Windom, Reed, and Borton (Docket # 54 at 7) and that the Allen County Defendants' motion did not address her unreasonable seizure claims against the ACSD officers. Both of these arguments will be addressed in turn.

## B. Discussion

### 1. Unreasonable Search Claim

The imposition of individual liability on a defendant under § 1983 requires "personal involvement in the alleged constitutional deprivation." *Minix v. Canarecci*, 597 F.3d 824, 833 (7th Cir. 2010) (quoting *Palmer v. Marion Cnty.*, 327 F.3d 588, 594 (7th Cir. 2003)). This is because "[s]ection 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) (citation omitted). And although direct participation is not required, there must be at least a showing that the individual defendant acquiesced in some demonstrable manner in the alleged constitutional violation. *Palmer*, 327 F.3d at 594.

Powell's unreasonable search claim essentially boils down to whether she has provided sufficient evidence establishing the personal involvement of ACSD Officers Windom, Neumann, Reed, and Borton in the allegedly unconstitutional search of her home on January 11, 2011. To review, while Officer Windom admittedly entered the home, Officers Neumann, Reed, and Borton maintain that they stayed outside. (Neumann Aff. ¶¶ 14-15; Reed Aff. ¶¶ 6-7; Borton Aff. ¶¶ 6-7.) Officer Windom claims that, once in the home, he only spoke to Powell with a FWPD officer and did not search it. (Windom Aff. ¶¶ 14-15.) On the other hand, Powell argues that at least two ACSD officers—Officer Windom and another unidentified ACSD officer—entered and searched her home. (Docket # 54 at 5-6, 8.) As to this unidentified ACSD officer, Powell asserts that since the other three officers were the only ACSD officers present, a reasonable inference is that one of them was this second officer. (Docket # 54 at 8.) Powell

11

further argues that the identity of this second ACSD officer is a matter for the jury to determine as she may still visually identify him at trial. (Docket # 54 at 8.)

But "the inability to identify the specific culprit is not enough to survive summary judgment." *Billups v. Kinsella*, No. 08 CV 3365, 2010 WL 5110121, at *4 (N.D. Ill. Dec. 9, 2010); *see Hessel v. O'Hearn*, 977 F.2d 299, 305 (7th Cir. 1992) (affirming grant of summary judgment on property damage claim where plaintiffs admitted they were not sure which of fourteen officers stole their property). Furthermore, Powell cannot proceed on her unreasonable search claim against Officers Windom, Neumann, Reed, and Borton based on speculation that, of the four ACSD officers present at her home on January 11, 2011, two of them, though she provides no evidence of which ones, searched it. *See Billups*, 2010 WL 5110121, at *4; *see also Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 973 (7th Cir. 2003) (finding that evidence that defendant was in a truck was not sufficient to link defendant, one of seventeen officers who could have damaged the truck, to the damage).

While Powell alleges that Officer Windom was one of the ACSD officers that searched her home, she reaches this conclusion by merely speculating from Officer Windom's admission that he had entered the house. In the same breath, however, Officer Windom swore he did not search it. As for the other three officers, Powell speculates that, because they were the only other ACSD officers present, one of them must have participated in the search. Not only is such unsupported speculation insufficient to overcome a summary judgment motion, *Truhlar*, 600 F.3d at 893, but a defendant's mere presence during an alleged constitutional violation, without more, is insufficient to establish his personal involvement, *see Jones v. Williams*, 297 F.3d 930, 939 (9th Cir. 2002) (rejecting "the idea that mere presence at a search or membership in a group,

12

without personal involvement in and a casual connection to the unlawful act, can create liability under section 1983"); *Hessel*, 977 F.2d at 305 (holding that the plaintiff could not rely on a "principle of collective punishment as the sole possible basis of liability" and that the "[p]roximity to a wrongdoer does not authorize punishment"). As such, Powell cannot "seek to hold all Defendant Officers collectively liable simply because they were present [at] the [home] during the search." *Nunez v. Dart*, No. 09 C 623, 2011 WL 5599505, at *3 (N.D. Ill. Nov. 17, 2011).

Rather, Powell must tie the actions of the named Defendants to the constitutional deprivation she allegedly suffered. *See Grieveson*, 538 F.3d at 777-78. Besides Officer Windom's own admission that he entered the house, Powell has presented no evidence indicating which individual officers were responsible for the allegedly unconstitutional search of her home, dooming her claim. *See Gordon v. Louisville-Jefferson Cnty. Metro Gov't*, No. 3:08-CV-00029, 2011 WL 777939, at *4 (W.D. Ky. Feb. 28, 2011); *see also Grieveson*, 538 F.3d at 778 ("Vague references to a group of 'defendants,' without specific allegations tying the individual defendants to the alleged unconstitutional conduct, do not raise a genuine issue of material fact with respect to those defendants."). Moreover, although Powell argues that a reasonable inference from the presence of Officers Neumann, Reed, and Borton at her home is that one of these officers also searched the home, none of these officers admit to being inside Powell's home, nor were they personally identified as being inside it. With the record void of any evidence to suggest that they did in fact enter the home, they are entitled to summary judgment. *See Stepney v. City of Chicago*, No. 07 C 5842, 2010 WL 4226525, at *5 (N.D. Ill. Oct. 20, 2010).

While Officer Windom—who admitted to entering Powell's home—is a closer case, he is

also entitled to summary judgment on Powell's unreasonable search claim. First, Powell has failed to show that Windom's mere presence in her home was a violation of her Fourth Amendment right. *See id.* at *4. And although there are facts suggesting that *some* ACSD officer or officers searched Powell's home, there are no facts in the record indicating that *Officer Windom* searched the home. None of the FWPD reports Powell relies on provide the identity or even a description of the ACSD officers that allegedly participated in the search. Powell's affidavit similarly fails to provide such details. It is entirely possible that two of the other ACSD officers—and not Officer Windom—entered the home and searched it. The problem is that Powell has completely failed to present facts indicating which ACSD officers allegedly searched her home, and this failure applies to Officer Windom as well. The mere fact that he was present in the home does not mean he searched it; additional facts identifying him as a participant in the search or indicating that he acquiesced to it—which Powell does not present here—are needed to establish his personal involvement. *See Hessel*, 977 F.2d at 305; *Stepney*, 2010 WL 4226525, at *4 (denying summary judgment for officers who denied entering the home when there was specific evidence, including a description of a "bald-headed" officer, to suggest they did so and granting summary judgment for officers when there was no evidence they entered the home).

Finally, as to Powell's argument that she could potentially identify the second ACSD officer who allegedly searched her home at trial, Powell "cannot proceed to trial and ask the jury to merely speculate in the absence of evidence as to" whether any of these officers were involved in the search and, if so, which ones. *Nunez*, 2011 WL 5599505, at *3. Moreover, summary judgment is "not a dress rehearsal or practice run; it is the *put up or shut up* moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its

14

version of events," *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (citation omitted) (emphasis added). Powell's mere speculation that *at trial* she could potentially identify the Defendants personally involved in the alleged unconstitutional search is not enough to satisfy her burden at the summary judgment stage of "sett[ing] forth *specific facts* showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) (emphasis added). Furthermore, she cannot meet this burden "by creating some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Hodge v. Parker*, No. 1:05-cv-1776-DFH-TAB, 2008 WL 3411682, at *5 (S.D. Ind. Aug. 8, 2008); *see Zabarowski v. Dart*, No. 08 C 6946, 2011 WL 6660999, at *10 (N.D. Ill. Dec. 20, 2011). Accordingly, Officers Windom, Neumann, Reed, and Borton are entitled to summary judgment on Powell's unreasonable search claim.

    *2. Unreasonable Seizure Claim*

Moving onto Powell's final claim, while Powell argues that the Allen County Defendants fail to address her unreasonable seizure claim (Docket # 54 at 2), the Allen County Defendants maintain that they "clearly moved for summary judgment on 'all claims raised in Powell's Complaint'" (Docket # 59 at 7 (citing Docket # 40 at 1)), including any unreasonable seizure claim. Rather than alleging any specific incidents of unreasonable seizure in her Complaint, Powell raises this claim in the context of damages, stating that she "seeks compensatory damages for unlawful search and seizure, excessive force, wrongful seizure under the Fourth Amendment, false arrest (as Plaintiff was not free to leave when her home was invaded and she was made to answer questions by officers who had no warrant) . . . ." (Docket # 1 at ¶ 5.) Even if Powell adequately brought such a claim in her Complaint, she has presented little to no evidence that

15

she was ever unreasonably seized, or which officers allegedly executed such a seizure, and no argument to this effect. Underdeveloped or skeletal arguments are considered waived. *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012); *Trentadue v. Redmon*, 619 F.3d 648, 654 (7th Cir. 2010); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Nonetheless, as the Allen County Defendants moved for summary judgment on all of Powell's claims, the Court will briefly address her unreasonable seizure claim.

For the purposes of the Fourth Amendment, a seizure occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that [she] was not free to leave." *United States v. Tyler*, 512 F.3d 405, 409-410 (7th Cir. 2008) (internal quotations and citations omitted). Whether a seizure has occurred is a highly fact-bound inquiry, and the Court may consider several factors in making this determination, including the following:

> whether the encounter took place in a public place or whether police removed the person to another location; whether the police told the person [she] was not under arrest and was free to leave; whether the police informed the person that [she] was suspected of a crime or the target of an investigation; whether the person was deprived of identification or other documents without which [she] could not leave (such as a driver's license or train or airline ticket); and whether there was any limitation of the person's movement such as physical touching, display of a weapon, or other coercive conduct on the part of the police that indicates cooperation is required.

*Id.* at 410 (citation omitted).

Here, despite the highly factual nature of this inquiry, the record is almost entirely devoid of any evidence that the named ACSD officers unreasonably seized Powell, and the Court will not scour the record to find support for arguments that are wholly undeveloped. *See Dunkel*, 927 F.2d at 956 ("Judges are not like pigs, hunting for truffles buried in briefs."). Nevertheless, from the allegations in the Complaint—that Powell "was not free to leave when her home was invaded

16

and she was made to answer questions by officers who had no warrant" (Docket # 1 at ¶ 5)—any seizure apparently took place in Powell's home; there is no evidence that she was ever moved to another location or told she was under arrest or not free to leave. Furthermore, there is no dispute when the ACSD officers came to Powell's home, they were searching for Lapsley (Powell's former boyfriend) or, on January 11, 2011, acting as back up to the FWPD on a domestic disturbance call. There is no indication that they were even investigating or targeting Powell, let alone that they informed her they were doing so. Additionally, there is no allegation that Powell's identification or driver's license were taken away, or that she was told she could not leave. Finally, the record contains no evidence that the ACSD officers limited Powell's movement by physical touching, display of a weapon, or other coercive conduct. While Powell alleges that FWPD officers displayed weapons, she conceded that no ACSD officer did so. (Powell Dep. 173.)

Furthermore, even if Powell could establish that she was unreasonably seized—which she provides no evidence of—she has, once again, failed to establish the personal involvement of any of the named ACSD officers in any allegedly unreasonable seizure, which is fatal to her claim. *See, e.g.*, *Molina*, 325 F.3d at 973; *Hessel*, 977 F.2d at 305; *Nunez*, 2011 WL 5599505, at *3; *Stepney*, 2010 WL 4226525, at *4. As such, all of the named ACSD officers—Officers Furnish, Jarboe, Williams, Hoffman, Headford, Neumann, Windom, Reed, and Borton—are entitled to summary judgment on any unreasonable seizure claim brought.

## VI. CONCLUSION

For the reasons set forth above, the Court GRANTS both the City of Fort Wayne's Motion for Summary Judgment (Docket # 43) and the Allen County Defendants' Motion for

Summary Judgment (Docket # 40) and DIRECTS the Clerk to enter judgment in favor of the City of Fort Wayne, the Allen County Sheriff, and Officers Gabriel Furnish, Brian M. Jarboe, Brock Williams, Robert Headford, Dean Hoffman, Michael Neumann, Derrick Windom, Mark Allen Reed, and Scott Borton and against Plaintiff Yolanda Powell.

SO ORDERED.

Entered this 12th day of June, 2012.

/s/ Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge